Craig Murphy, Esq.
California Bar No. 314526
MURPHY & MURPHY LAW OFFICES
4482 Market Street, Ste 407
Ventura, CA  93003
(702) 369-9696 Phone
(702) 369-9630 Fax
Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAYLOR FITZGERALD, individually and as Parent and Guardian of R.B., a Minor Child,<br><br>　　　　Plaintiffs,<br>v.<br><br>PAPA MURPHY'S INTERNATIONAL, LLC, a Foreign Corporation d/b/a PAPA MURPHY'S TAKE N BAKE; DOES 1 through 10, inclusive; and ROE ENTITIES 1 through 10, inclusive,<br><br>　　　　Defendants. | Case No. 2:18-cv-01214-JAM-DB<br><br>**FIRST AMENDED COMPLAINT**<br><br>Jury Trial Requested |

NOW comes Plaintiff, TAYLOR FITZGERALD, individually, and on behalf of R.B., a minor child, who, by and through her attorneys of record, Craig Murphy and the law firm of Murphy & Murphy Law Offices, alleges upon information and belief as follows:

## **PARTIES**

1.　　　　Plaintiffs TAYLOR FITZGERALD and R.B., a Minor child, are residents of Rocklin, California.  Plaintiffs reside within the jurisdiction of this Court and are citizens of the State of California.

2.　　　　Defendant, PAPA MURPHY'S INTERNATIONAL LLC, d/b/a PAPA MURPHY'S TAKE N BAKE (hereinafter, "PAPA MURPHY'S") is a Delaware corporation headquartered in Vancouver, Washington. Therefore, PAPA MURPHY'S INTERNATIONAL,

LLC is a citizen of the states of Delaware and Washington. PAPA MURPHY'S sole member is Papa Murphy's Company Stores, Inc., which is organized and existing under the laws of the State of Washington and has its principal offices in Vancouver, Washington. Papa Murphy's Company Stores, Inc. is, therefore, a citizen of the State of Washington, and not California.

3. Defendant DOE 1 is the true and proper business entity that was the franchisee/owner of the Papa Murphy's Take N Bake restaurant located at 4819 Granite Drive, Rocklin, California 95677. Upon information and belief, DOE 1 owned and operated said Papa Murphy's Take N Bake restaurant at all times relevant to this matter. At this time, after diligent search, Plaintiffs are unaware of the ownership and actual business name of the franchisee/owner. However, as stated above, it is believed and therefore alleged that DOE 1 is responsible for the acts and omissions of Defendant Papa Murphy's Take N Bake restaurant in whole or in part as specified herein. Plaintiffs will ask leave of this Court to insert the true name and capacity for Defendant DOE 1 when the true name and capacity of the DOE 1 is learned by Plaintiffs.

4. Defendant ROE ENTITY 1 is the true and proper business entity that was the grower and supplier of the romaine lettuce from the Yuma, Arizona growing region supplied to the Papa Murphy's Take N Bake restaurant located at 4819 Granite Drive, Rocklin, California 95677. Upon information and belief, ROE ENTITY 1 supplied the romaine lettuce at all times relevant to this matter. At this time, after diligent search, Plaintiffs are unaware of the ownership and actual business name of the lettuce grower/supplier. However, as stated above, it is believed and therefore alleged that ROE ENTITY 1 is responsible for the acts and omissions of Defendant Papa Murphy's restaurant in whole or in part as specified herein. Plaintiffs will ask leave of this Court to insert the true name and capacity for Defendant ROE ENTITY 1 when the true name and capacity of the grower/supplier is learned by Plaintiffs.

5. DOES 2 through 10 inclusive are persons, and ROE ENTITIES 2 through 10 are corporations, related subsidiary or parent entities, associations, or business entities, whose true names and identities and capacities are unknown to Plaintiffs at this time. The DOE Defendants are individual persons acting on behalf of or in concert with, or at the direction of, any of the Defendants. The ROE Defendants may be corporations, associations, partnerships, subsidiaries,

Murphy & Murphy Law Offices
4482 Market Street, Ste 407
Ventura, CA 93003
Telephone (702) 369-9696
Facsimile (702) 369-9630

holding companies, owners, predecessor or successor entities, joint ventures, parent corporations, related business entities or the employer of any of the Defendants. Each named Defendant and the DOE and ROE Defendants are legally responsible for the events and happenings stated in this Complaint, and thus proximately caused injury and damages to Plaintiffs. In particular, said DOE and ROE Defendants are responsible in full or in part for the growing, distribution, processing, preparation, contamination, and sale of the ingredients in and the romaine lettuce sold to or by Defendant Papa Murphy's restaurant. Plaintiffs will ask leave of this Court to insert the true names and capacities for such DOE and ROE Defendants when discovered to substitute those true names as defendants into these proceedings for said DOE and ROE Defendants.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000.00, exclusive of costs, it is between citizens of different states, and because the Defendants have certain minimum contacts with the State of California such that maintenance of the suit in this district does not offend traditional notions of fair play and substantial justice.

7. Venue in the United States District Court for the Eastern District of California is proper pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the Plaintiffs' claims and causes action occurred in this judicial district, and because the Defendants are subject to personal jurisdiction in this judicial district at the time of the commencement of the action.

## GENERAL ALLEGATIONS

### Prior Outbreaks Linked to Lettuce and Other Leafy Greens

8. *E. coli* O157:H7 outbreaks associated with lettuce and other leafy greens are by no means a new phenomenon. Outlined below is a list of *E. coli* outbreaks involving contaminated lettuce or leafy greens:

| Date | Causative Agent | Illnesses Reported | Source |
|---|---|---|---|

Murphy & Murphy Law Offices
4482 Market Street, Ste 407
Ventura, CA 93003
Telephone (702) 369-9696
Facsimile (702) 369-9630

| | | | |
|---|---|---|---|
| Nov. 2017- Dec. 2017 | E. coli O157:H7 | 41, 1 death | Romaine lettuce |
| Dec. 2015-Jan. 2016 | Listeria monocytogenes | 19, 1 death | Package salads |
| Apr. 2015 | Escherichia coli, Shiga toxin-producing | 7 | Prepackaged leafy greens |
| Mar. 2015 | E. coli O157:H7 | 12 | Leafy greens |
| Jul. 2014 | E. coli O111 | 15 | Salad/cabbage served at Applebee's and Yard House (Minnesota) |
| Oct. 2013 | E. coli O157:H7 | 33 | Pre-packaged salads and sandwich wraps (California) |
| Jul. 2013 | E. coli O157:H7 | 94 | Lettuce served at Federico's Mexican Restaurant |
| Jul. 2013 | Cyclospora | 140 (Iowa); 87 (Nebraska) | Salad mix, cilantro |
| Dec. 2012 – Jan. 2013 | E. coli O157:H7 | 31 | Shredded lettuce from Freshpoint, Inc. |
| Oct. 2012 | E. coli O157:H7 | 33 | Leafy greens salad mix (Massachusetts) |

| Date | Pathogen | Cases | Food |
|---|---|---|---|
| Apr. 2012 | E. coli O157:H7 | 28 | Romaine lettuce |
| Dec. 2011 | Salmonella Hartford | 5 | Lettuce; roast beef |
| Dec. 2011 | Norovirus | 9 | Lettuce, unspecified |
| Oct. 2011 | E. coli O157:H7 | 58 | Romaine lettuce |
| Oct. 2011 | E. coli O157:H7 | 26 | Lettuce |
| Aug. 2011 | N/A | 8 | Lettuce; onions; tomatoes |
| Jul. 2011 | Cyclospora cayatenensis | 99 | Lettuce based salads |
| Jun. 2011 | Norovirus | 23 | Garden salad |
| Apr. 2011 | Salmonella Typhimurium | 36 | Multiple salads |
| Feb. 2011 | Norovirus | 24 | Garden salad |
| Jan. 2011 | Norovirus | 93 | Lettuce; salad, unspecified |
| Jul.-Oct. 2010 | Salmonella Java | 136 | Salad vegetable |
| May 2010 | E. coli O145 | 33 (26 lab-confirmed) | Romaine Lettuce grown in Arizona |
| Apr. 2010 | Salmonella Hvittingfoss | 102 | Lettuce, tomatoes, and olives served at Subway |

Murphy & Murphy Law Offices
4482 Market Street, Ste 407
Ventura, CA 93003
Telephone (702) 369-9696
Facsimile (702) 369-9630

| | | | |
|---|---|---|---|
| | | | restaurants |
| Jan. 2010 | E. coli | 260 | Lettuce grown in France |
| Dec. 2009 | Norovirus | 16 | Lettuce |
| Aug. 2009 | Salmonella Typhimurium | 27 | Lettuce |
| Aug. 2009 | Salmonella spp | 124 | Romaine lettuce; Recalls issued by Tanimura & Antle, Inc. (lettuce), Muranaka Farm, Inc. (parsley), and Frontera Produce (cilantro) |
| Jul. 2009 | Salmonella Typhimurium | 145 | Shredded lettuce from Taylor Farms |
| May. 2009 | Norovirus | 10 | Lettuce, onion, and tomato in chicken salad |
| Nov. 2008 | E. coli O157:H7 | 130 | Romaine lettuce |
| Oct. 2008 | E. coli O157:H7 | 2 | Chopped shredded iceberg lettuce (Michigan) |

Murphy & Murphy Law Offices
4482 Market Street, Ste 407
Ventura, CA  93003
Telephone (702) 369-9696
Facsimile (702) 369-9630

Murphy & Murphy Law Offices
4482 Market Street, Ste 407
Ventura, CA 93003
Telephone (702) 369-9696
Facsimile (702) 369-9630

| | | | |
|---|---|---|---|
| Oct. 2008 | E. coli O157:H7 | 43 (Johnathan's Family Restaurant), 21 (Little Red Rooster Restaurant), 12 (M.T. Bellies Restaurant) | Lettuce |
| Oct. 2008 | Norovirus | 64 | Tomato relish, lettuce-based salad |
| Aug.-Sep. 2008 | E. coli O157:H7 | 74 | Lettuce from Aunt Mid's Produce Company (California) |
| Aug.-Oct. 2008 | E. coli O157:H7 | 13 | Spinach (Oregon) |
| May. 2008 | E. coli O157:H7 | 10 | Prepackaged lettuce |
| May. 2008 | E. coli O157:H7 | 6 | Pre-packaged salad |
| May 2008 | E. coli O157:H7 | 9 | Lettuce (California, U.S.) |
| Apr. 2008 | Salmonella Branderup | 12 | Green salad, tomato |
| Jul. 2007 | Shigella sonnei | 72 | Salad |
| Jul. 2007 | E. coli O157:H7 | 26 | Lettuce |

| | | | |
|---|---|---|---|
| Feb. 2007 | Norovirus | 8 | Lettuce |
| Jan. 2007 | Norovirus | 9 | Salad |
| Nov. 2006 | E. coli O157:H7 | 78 | Lettuce |
| Oct. 2006 | E. coli O157:H7 | 205 | Pre-packaged baby spinach from Dole Food Company (California) |
| Sep. 2006 | Norovirus | 9 | Salad |
| Sep. 2005 | E. coli O157:H7 | 34 | Prepackaged bagged lettuce from Dole Food Company |
| Jun. 2006 | Salmonella Typhimurium | 18 | Lettuce, tomatoes |
| Oct. 2005 | E. coli O157:H7 | 12 | grapes, green; lettuce, prepackaged |
| Nov. 2004 | E. coli O157:H7 | 6 | Lettuce, unspecified |
| Jul. 2004 | Salmonella Newport | 97 | Iceberg lettuce |
| Nov. 2003 | E. coli O157:H7 | 19 | Spinach, unspecified |
| Oct. 2003 | E. coli O157:H7 | 16 | Spinach, unspecified |

Murphy & Murphy Law Offices
4482 Market Street, Ste 407
Ventura, CA 93003
Telephone (702) 369-9696
Facsimile (702) 369-9630

| Date | Pathogen | Cases | Source |
|---|---|---|---|
| Sep. 2003 | E. coli O157:H7 | 51 | Lettuce-based salads, unspecified |
| Nov. 2002 | E. coli O157:H7 | 60 | Romaine lettuce |
| Jul. 2002 | E. coli O157:H7 | 32 | Romaine lettuce from Spokane Produce (Washington) |
| Jul. 2002 | E. coli O157:H7 | 55 | Caesar salad |
| Nov. 2001 | E. coli O157:H7 | 20 | Lettuce-based salads, unspecified |
| Oct. 2000 | E. coli O157:H7 | 6 | Salad |
| May 2000 | Campylobacter jejuni | 13 | Salad |
| May 2000 | Norovirus | 3 | Salad |
| Feb. 2000 | Norovirus | 7 | Salad |
| Oct. 1999 | E. coli O157:H7 | 45 | Lettuce, salad |
| Oct. 1999 | E. coli O157:H7 | 47 | Salad |
| Oct. 1999 | Norovirus | 16 | Salad |
| Sep. 1999 | E. coli O157:H11 | 6 | Lettuce |
| Sep. 1999 | Norovirus | 115 | Lettuce |

| Sep. 1999 | E. coli O111:H8 | 58 | Salad |
| --- | --- | --- | --- |
| Aug. 1999 | Norovirus | 25 | Salad |
| May 1999 | Norovirus | 28 | Salad |
| Feb. 1999 | E. coli O157:H7 | 72 | Lettuce |
| May 1998 | E. coli O157:H7 | 2 | Salad |
| May 1996 | E. coli O157:H7 | 61 | Lettuce |
| Oct. 1995 | E. coli O153:H46 | 11 | Lettuce |
| Sep. 1995 | E. coli O153:H47 | 30 | Lettuce |
| Sep. 1995 | E. coli O157:H7 | 21 | Lettuce |
| Jul. 1995 | E. coli O153:H48 | 74 | Lettuce |

**The 2018 E. coli O157:H7 Outbreak Linked to Romaine Lettuce from Yuma**

9. As of May 8, 2018, 149 cases in 29 states: Alaska (8), Arizona (8), California (30), Colorado (2), Connecticut (2), Florida (1), Georgia (5), Idaho (11), Illinois (2), Kentucky (1), Louisiana (1), Massachusetts (3), Michigan (4), Minnesota (10), Mississippi (1), Missouri (1), Montana (8), New Jersey (8), New York (4), North Dakota (2), Ohio (3), Pennsylvania (20), South Dakota (1), Tennessee (1), Texas (1), Utah (1), Virginia (1), Washington (7), and Wisconsin (2). Six are reported ill in Canada.

10. Illnesses started on dates ranging from March 13, 2018 to April 25, 2018. Ill people range in age from 1 to 88 years, with a median age of 30. Sixty-five percent of ill people are female. Of 129 people with information available, 64 (50%) have been hospitalized, including 17 people who developed hemolytic uremic syndrome, a type of kidney failure. One

1  death was reported from California.

2      11.    Illnesses that occurred after April 17, 2018, might not yet be reported due to the
3  time it takes between when a person becomes ill with *E. coli* and when the illness is reported.
4  This takes an average of two to three weeks.

5      12.    State and local health officials continue to interview ill people to ask about the
6  foods they ate and other exposures before they became ill. 102 (91%) of 112 people interviewed
7  reported eating romaine lettuce in the week before their illness started. Most people reported
8  eating a salad at a restaurant, and romaine lettuce was the only common ingredient identified
9  among the salads eaten. The restaurants reported using bagged, chopped romaine lettuce to make
10 salads. At this time, ill people are not reporting whole heads or hearts of romaine. Information
11 collected to date indicates that chopped romaine lettuce from the Yuma, Arizona growing region
12 could be contaminated with *E. coli* O157:H7 and could make people sick.

13     13.    Federal and state public health officials continue to investigate this outbreak.
14 Among other things, these investigators are currently trying to determine the precise location(s)
15 at which the contaminated lettuce was grown and/or processed.

### ***E. coli* O157:H7 Infection and Hemolytic Uremic Syndrome**

17     14.    *Escherichia coli* is the name of a common family of bacteria, most members of
18 which do not cause human disease. *E. coli* O157:H7 is a specific member of this family that can
19 cause bloody diarrhea (hemorrhagic colitis) in humans. In the years since *E. coli* O157:H7 was
20 first identified as a cause of diarrhea, this bacterium has established a reputation as a significant
21 public health hazard.

22     15.    *E. coli* O157:H7 lives in the intestines of cattle and other ruminants. *E. coli*
23 O157:H7 is also notable among pathogenic bacteria for its extremely low infectious dose—that
24 is, the number of bacteria necessary to induce infection in a person. While for most pathogenic
25 bacteria it takes literally millions of bacterial colonies to cause illness, it is now known that
26 fewer than 50 *E. coli* O157:H7 bacteria can cause illness in a child. The practical import is that
27 even a microscopic amount of exposure can trigger a devastating infection.

28 ///

Murphy & Murphy Law Offices
4482 Market Street, Ste 407
Ventura, CA 93003
Telephone (702) 369-9696
Facsimile (702) 369-9630

16. The most severe cases of the *E. coli* O157:H7 infection occur in young children and in the elderly, presumably because the immune systems in those age populations are the most vulnerable. After a susceptible individual ingests *E. coli* O157:H7, the bacteria attach to the inside surface of the large intestine and initiates an inflammatory reaction of the intestine. What ultimately results is the painful bloody diarrhea and abdominal cramps characteristic of the intestinal illness.

17. The mean incubation period (time from ingestion to the onset of symptoms) of *E. coli* O157:H7 is estimated to be two to four days (range, 1-21 days). Typically, a patient with an acute *E. coli* O157:H7 infection presents with abdominal cramps, bloody diarrhea, and vomiting. The duration of diarrhea in children with *E. coli* O157:H7 infections are significantly longer than that of adults.

18. *E. coli* O157:H7 can produce a wide spectrum of disease from mild, non-bloody diarrhea, to severe bloody diarrhea accompanied by excruciating abdominal pain to life-threatening complications. In most infected individuals, the intestinal illness lasts about a week and resolves without any long-term effects. Antibiotics do not appear to aid in combating these infections, and recent medical studies suggest that antibiotics are contraindicated for their risk of provoking more serious complications. Apart from good supportive care, which should include close attention to hydration and nutrition, there is no specific therapy.

19. About 10% of individuals with *E. coli* O157:H7 infections (mostly young children) go on to develop hemolytic uremic syndrome (HUS), a severe, potentially life-threatening complication. The essence of the syndrome is described by its three central features: destruction of red blood cells, destruction of platelets (those blood cells responsible for clotting), and acute renal failure due to the formation of micro-thrombi that occlude microscopic blood vessels that make up the filtering units within the kidneys.

20. There is no known therapy to halt the progression of HUS. The active stage of the disease usually lasts one to two weeks, during which a variety of complications are possible. HUS is a frightening illness that even in the best American medical facilities has a mortality rate of about 5%. The majority of HUS patients require transfusion of blood products and develop

complications common to the critically ill.

## R.B.'s Injuries

21. On or about April 10, 2018, R.B. consumed romaine lettuce from the Yuma, Arizona growing region in a salad at the Papa Murphy's restaurant located at 4819 Granite Drive, Rocklin, California 95677. The romaine lettuce was contaminated by *E. coli* O157:H7 bacteria, leading to R.B.'s *E. coli* O157:H7 infection and related injuries.

22. R.B. began feeling ill around April 12, 2018. He experienced fevers, agonizing abdominal cramps, and bloody diarrhea, culminating in his admittance to Sutter General Sacramento on March 14, 2018.

23. R.B. remained hospitalized until April 30, 2018. During his hospitalization, he developed HUS, and required four blood transfusions. He also submitted a stool sample that tested positive for *E. coli* O157:H7.

24. R.B.'s recovery continues as of the date of this complaint.

## CAUSES OF ACTION

## COUNT I - BREACH OF WARRANTY

25. The Plaintiffs incorporate by reference and make a part of this count each and every foregoing paragraph of this Complaint.

26. Defendants produced, distributed, and sold the contaminated food product that injured the Plaintiff, and caused his *E. coli* O157:H7 infection. The Defendants are, therefore, manufacturers, distributors, and sellers of an adulterated food product, and the adulterated food product reached the Plaintiff without substantial change from the condition in which it was sold by the Defendant.

27. The Defendants are subject to liability to the Plaintiff for its breaches of express and implied warranties made to the Plaintiff with respect to the food product sold to him, including the implied warranties of merchantability and of fitness for a particular use. Further, the Defendants expressly warranted, through its sale of food to the public, and by the statements and conduct of its employees and agents, that the food product ultimately sold to the Plaintiff was fit for human consumption, and not otherwise adulterated or injurious to health.

Murphy & Murphy Law Offices
4482 Market Street, Ste 407
Ventura, CA 93003
Telephone (702) 369-9696
Facsimile (702) 369-9630

28. The food product sold by the Defendants and ultimately consumed by Plaintiff, which product was contaminated with *E. coli* O157:H7 and related filth and adulteration, would not pass without exception in the trade, and was thus in breach of the implied warranty of merchantability.

29. The Plaintiff further alleges that the contaminated food sold by the Defendants and consumed by the Plaintiff was not fit for the uses and purposes intended by either the Plaintiff or the Defendants, *i.e.,* human consumption, and that this product was therefore in breach of the implied warranty of fitness for its intended use.

30. As a further direct and proximate result of the conduct of Defendants and their agents, servants, and/or employees as aforesaid, Plaintiff suffered an *E. coli* O157:H7 infection and the adverse effects associated with the same, as described in previous paragraphs of this complaint.

31. As a further direct and proximate result of the conduct of Defendants and their agents, servants, and/or employees, Plaintiff was forced to endure great pain, suffering, and inconvenience and may endure the same in the future. He was forced to submit to medical, medicinal, and therapeutic care and may be forced to submit to the same in the future.

32. As a further direct and proximate result of the conduct of Defendants and their agents, servants, and/or employees, Plaintiff suffered an inability to perform the activities of daily living or some of them.

33. As a further direct and proximate result of the conduct of Defendants and their agents, servants, and/or employees, Plaintiff was forced to expend sums of money for doctors, hospitals, and/or other items necessary for his proper care and treatment.

## COUNT II

## STRICT LIABILITY

34. The Plaintiff incorporates by reference and makes a part of this Count each and every foregoing paragraph of this Complaint.

35. The Defendants owed a duty to the Plaintiff to manufacture and sell only food that was not adulterated, was fit for human consumption, was reasonably safe in construction, and

was free of pathogenic bacteria or other substances injurious to human health. The Defendants breached this duty.

36. The Defendants owed a duty to the Plaintiff to provide adequate warnings about the non-obvious danger of its food products, including warnings and instructions indicating that the food might contain pathogenic bacteria, including *E. coli* O157:H7. The Defendants breached this duty.

37. The Defendants owed a duty to the Plaintiff to prepare, serve, and sell food that was fit for human consumption, and that was safe to the extent contemplated by a reasonable and ordinary consumer. The Defendants breached this duty.

38. Because the food that the Plaintiff purchased and consumed was adulterated, not fit for human consumption, not reasonably safe in design and construction, lacked adequate warnings and instructions, and was unsafe to an extent beyond that contemplated by the ordinary consumer, the Defendants are liable to the Plaintiff for the harm proximately caused to the him by its manufacture and sale of contaminated and adulterated food products, and as such the Defendants are strictly liable to the Plaintiff for such harm.

## COUNT III

### NEGLIGENCE

39. Plaintiff incorporates by reference and makes a part of this Count each and every foregoing paragraph of this Complaint.

40. The Defendants had a duty to comply with all statutory and regulatory provisions that pertained or applied to the manufacture, distribution, storage, labeling, and sale of the food products that injured Plaintiff, including the applicable provisions of the Federal Food, Drug and Cosmetic Act, and similar California food and public health statutes, including without limitation the provisions of the California Health & Safety Code Article 5, all of which prohibit the manufacture and sale of any food that is adulterated, or otherwise injurious to health.

41. The food product that Defendants manufactured and sold, and that the Plaintiff purchased and consumed, was adulterated within the meaning of the federal Food, Drug and

Murphy & Murphy Law Offices
4482 Market Street, Ste 407
Ventura, CA 93003
Telephone (702) 369-9696
Facsimile (702) 369-9630

Cosmetic Act, and similar California statutes, because it contained a deleterious substance that rendered it injurious to health, *i.e.*, *E. coli* O157:H7 bacteria.

42. The Defendants violated federal, state, and local food safety regulations by its manufacture and sale of adulterated food. These federal, state, and local food safety regulations are applicable here, and establish a positive and definite standard of care in the manufacture and sale of food. The violation of these regulations constitutes negligence as a matter of law.

43. The Plaintiff is in the class of persons intended to be protected by these statutes and regulations, and Plaintiff was injured as the direct and proximate result of the Defendants' violation of applicable federal, state, and local food safety regulations.

44. The Defendants were negligent in the manufacture, distribution, and sale of a food product that was adulterated with *E. coli* O157:H7, not fit for human consumption, and not reasonably safe because adequate warnings or instructions were not provided.

45. Once the Defendants learned, or in the exercise of reasonable care should have learned, of the dangers associated with preparing and selling food, including, but not limited to, cross-contamination between foods, and the dangers associated with improperly cleaned or washed food, it had a duty to warn the Plaintiff, but failed to do so.

43. The Defendants had a duty to use supplies and raw materials in producing its food products that were in compliance with applicable federal, state, and local laws, ordinances and regulations; that were from reliable sources; and that were clean, wholesome, free from adulteration and fit for human consumption, but failed to do so, and therefore breached that duty.

46. The Defendants were negligent in the selection of its suppliers, or other agents or subcontractors, and failed to adequately supervise them, or provide them with adequate standards, and, as a result, produced and sold food that was adulterated with *E. coli* O157:H7.

47. The Defendants had a duty to properly supervise, train, and monitor its employees, or the employees of its agents or subcontractors, engaged in the preparation and sale of its food products, to ensure compliance with the Defendants' operating standards and to ensure compliance with all applicable health regulations. The Defendants failed to properly supervise, train, and monitor these employees engaged in the manufacture, preparation and

Murphy & Murphy Law Offices
4482 Market Street, Ste 407
Ventura, CA 93003
Telephone (702) 369-9696
Facsimile (702) 369-9630

delivery of the food product ultimately sold to the Plaintiff, and thus breached that duty.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs pray for judgment against the Defendants as follows:

a. Judgment for the Plaintiffs against the Defendants for just compensation in a fair and reasonable amount for the damages above set forth; and

b. Such additional and/or further relief, including interest, costs, and reasonable attorney fees, as this Court deems just and equitable.

**JURY TRIAL DEMANDED**

DATED this 18th day of May, 2018.

MURPHY & MURPHY LAW OFFICES

_____
CRAIG MURPHY, ESQ.
Murphy & Murphy Law Offices
4482 Market Street, Ste. 407
Ventura, CA 93003
(805) 330-3393
craig@nvpilaw.com